UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BALSAM BRANDS INC., et al.,<br><br>             Plaintiffs,<br><br>     v.<br><br>CINMAR, LLC, et al.,<br><br>             Defendants. | Case No. 15-cv-04829-WHO<br><br>**CLAIM CONSTRUCTION ORDER** |

**INTRODUCTION**

Plaintiffs Balsam Brands Inc. and Balsam International Limited (collectively, "Balsam") accuse defendants Cinmar, LLC dba Frontgate / Grandin Road and Frontgate Marketing, Inc. (collectively, "Frontgate") of infringing two patents[1] relating to a type of invertible artificial Christmas tree that includes a "pivot joint" in the trunk that allows the tree to fold for simplified set up and storage. The parties dispute the meaning of several terms in the asserted claims. Having considered the parties' briefing, their arguments at the claim construction hearing, and other relevant materials, I construe the disputed terms as stated below.

**BACKGROUND**

Balsam filed this action on October 20, 2015 and moved for a temporary restraining order ("TRO") shortly thereafter. Dkt. Nos. 1, 11. Among other grounds for relief, Balsam accused Frontgate of infringing claims 1 and 4 of the '718 patent and claims 11 and 14 of the '077 patent. Compl. ¶ 23 (Dkt. No. 1). On November 12, 2015, I issued an order denying the TRO request. Dkt. No. 42 ("TRO Order"). Relevant here, I found that Frontgate's proposed constructions of the claim terms "pivot joint" and "pivotably joined" were superior to Balsam's, and that under those

---

[1] The asserted patents are U.S. Patent No. 8,062,718 (the "'718 patent") and U.S. Patent No. 8,993,077 (the "'077 patent").

United States District Court<br>Northern District of California

constructions, Balsam could not establish a likelihood of success on its patent infringement claims. TRO Order at 9-15. Frontgate had construed "pivot joint" as "a joint permitting rotation of the first trunk portion relative to the second trunk portion about one or more fixed points of rotation," and "pivotally joined" as "joined to permit rotation of the rotating trunk relative to the fixed trunk about one or more fixed points of rotation." Rappaport Decl. ¶¶ 42, 54 (Dkt. No. 26); *see also* TRO Order at 11. Balsam had construed "pivot joint" as "a joint permitting rotation of one of the connected parts with respect to the other," and "pivotally joined" as "mechanically connected to permit rotation." Loomis Decl. ¶ 23, 25 (Dkt. No. 12); *see also* TRO Order at 13.

On January 11, 2016, Balsam filed its first amended complaint ("FAC"), again asserting infringement of the '718 and '077 patents. FAC ¶¶ 31-42 (Dkt. No. 60). In addition to patent infringement, Balsam also brings claims for (1) false marking in violation of 35 U.S.C § 292; (2) trademark infringement in violation of 15 U.S.C. §§ 1114, 1125(a); (3) false advertising in violation of 15 U.S.C. § 1125(a); and (4) violation of California's Unfair Competition Law and False Advertising Law. *Id.* ¶¶ 43-86.

On May 23, 2016, the parties filed their joint claim construction statement identifying disputes over a number of claim terms. Dkt. No. 75. According to the joint claim construction statement, Balsam now asserts infringement of claims 1-4 and 10 of the '718 patent, and claims 1-6, 11-14, 17-19, 22 and 24 of the '077 patent. *Id.* at 1. The '077 patent is a continuation of the '718 patent, and the patents share a common specification titled, "Invertible Christmas Tree." Opening Br. at 1 n.1 (Dkt. No. 85); '718 patent at p.1; '077 patent at p.1. The inventor of the patents is Bruce Schooley. Opening Br. at 1; '718 patent at p.1; '077 patent at p.1. The asserted claims are as follows, with emphasis added to the disputed terms:

United States District Court
Northern District of California

2

United States District Court
Northern District of California

| | '718 patent |
|---|---|
| **Claim 1** | 1. A collapsible Christmas tree, comprising in combination:<br><br>a first trunk portion;<br><br>said first trunk portion having an elongate form extending between an upper end and a lower end, said upper end above said lower end when said first trunk portion is supported upon a floor;<br><br>a second trunk portion having an elongate form between a first end and a second end;<br><br>said second trunk portion including a plurality of limbs extending laterally therefrom;<br><br>a <u>pivot joint</u> coupling said first trunk portion to said second trunk portion in a manner allowing <u>pivoting</u> of said second trunk portion relative to said first trunk portion;<br><br>said <u>pivot joint</u> interfacing with said first trunk portion at a location closer to said upper end than to said lower end; and<br><br>said <u>pivot joint</u> interfacing with said second trunk portion at a location spaced from both said first end and said second end of said second trunk portion. |
| **Claim 2** | 2. The collapsible Christmas tree of claim 1 wherein said plurality of limbs are attached to said second trunk portion in a manner which allows <u>pivoting</u> of said limbs relative to said second trunk portion. |
| **Claim 3** | 3. The collapsible Christmas tree of claim 2 wherein said limbs are restricted to movement between substantially perpendicular to a longitudinal axis of said second trunk and a collapsed form with a tip of each limb closer to the second trunk portion than a deployed position extending substantially perpendicularly from said second trunk portion. |
| **Claim 4** | 4. The collapsible Christmas tree of claim 1 wherein said <u>pivot joint</u> allows for at least about 180° of <u>rotation</u> of said second trunk portion relative to said first trunk portion. |
| **Claim 10** | 10. The collapsible Christmas tree of claim 1 wherein said second end of said second trunk portion is attachable to a bottom end of a cap portion of the collapsible Christmas tree, said cap portion including a top trunk and top limbs extending laterally from said top trunk with said top trunk substantially aligned with said second trunk portion when said bottom end of said cap is coupled to said second end of said second trunk portion. |

United States District Court
Northern District of California

| | '077 patent |
|---|---|
| **Claim 1** | 1. A collapsible artificial tree, comprising in combination:<br><br>a first trunk portion having an elongate form extending between an upper end and a lower end;<br><br>a second trunk portion having an elongate form between a first end and a second end;<br><br>said second trunk portion including a plurality of limbs extending laterally therefrom; and<br><br>said first trunk portion <u>pivotably attached</u> to said second trunk portion at a location spaced from said first end and said second end of said second trunk portion, in a manner allowing <u>pivoting</u> of said second trunk portion relative to said first trunk portion. |
| **Claim 2** | 2. The collapsible artificial tree of claim 1 wherein said plurality of limbs are attached to said second trunk portion in a manner which allows <u>pivoting</u> of said limbs relative to said second trunk portion. |
| **Claim 3** | 3. The collapsible artificial tree of claim 2 wherein said limbs are restricted to movement between substantially perpendicular to a longitudinal axis of said second trunk and a collapsed form with a tip of each limb closer to the second trunk portion than when in a deployed position extending substantially perpendicularly from said second trunk portion. |
| **Claim 4** | 4. The collapsible artificial tree of claim 1 wherein a plurality of lights are provided along at least one cord, said cord routed up said first trunk portion and transitioning from said first trunk portion to said second trunk portion adjacent said location with said cord feeding electric power to a plurality of lights deployed on at least one limb coupled to said second trunk portion. |
| **Claim 5** | 5. The collapsible artificial tree of claim 1 wherein said second end of said second trunk portion is attachable to a bottom end of a cap portion of the collapsible Christmas tree, said cap portion including a top trunk and top limbs extending laterally from said top trunk with said top trunk substantially aligned with said second trunk portion when said bottom end of said cap is coupled to said second end of said second trunk portion. |
| **Claim 6** | 6. A collapsible artificial tree, comprising in combination:<br><br>a first trunk portion having an elongate form extending between an upper end and a lower end;<br><br>a second trunk portion having an elongate form between a first end and a second end;<br><br>said second trunk portion including a plurality of limbs extending laterally therefrom;<br><br>said first trunk portion <u>pivotably attached</u> to said second trunk portion in a manner allowing <u>pivoting</u> of said second trunk portion relative to said first trunk portion; and<br><br>wherein a <u>pivot joint element</u> is located between said first trunk portion and said second trunk portion at a location spaced from both said first end and said second end of said second trunk portion, said <u>pivot joint element</u> allowing for at least about 180° of <u>rotation</u> of said second trunk portion relative to said first trunk portion. |

4

| | |
|---|---|
| **Claim 11** | 11. An artificial tree, comprising:<br><br>a fixed trunk portion with an upper end above a lower end;<br><br>a <u>rotating</u> trunk with a first end opposite a second end;<br><br>said <u>rotating</u> trunk <u>pivotably joined</u> to said fixed trunk at a location between said first end and said second end; and a plurality of limbs extending laterally from said <u>rotating</u> trunk. |
| **Claim 12** | 12. The artificial tree of claim 11 wherein a <u>pivot joint element</u> is interposed between said fixed trunk and said <u>rotating</u> trunk, said <u>pivot joint element</u> adapted to allow <u>rotation</u> of said <u>rotating</u> trunk substantially 180° relative to said fixed trunk. |
| **Claim 13** | 13. The artificial tree of claim 12 wherein said <u>rotating</u> trunk is oriented substantially parallel with said fixed trunk both before and after <u>rotation</u> of said <u>rotating</u> trunk relative to said fixed trunk. |
| **Claim 14** | 14. The artificial tree of claim 11 wherein said plurality of limbs are <u>pivotably attached</u> to said <u>rotating</u> trunk, such that said limbs can <u>pivot</u> by gravity from a collapsed position to a deployed position with tips of said limbs closer to said <u>rotating</u> trunk when said limbs are in said collapsed position than in said deployed position. |
| **Claim 17** | 17. A collapsible artificial tree, comprising in combination:<br><br>a first trunk portion having an elongate form extending between an upper end and a lower end;<br><br>a second trunk portion having an elongate form between a first end and a second end;<br><br>said second trunk portion including a plurality of limbs extending laterally therefrom;<br><br>said second trunk portion having at least two orientations including a deployed orientation with said second end above said first end and a collapsed orientation with said first end above said second end; and<br><br>said first trunk portion <u>pivotably attached</u> to said second trunk portion in a manner allowing <u>pivoting</u> of said second trunk portion relative to said first trunk portion between said deployed orientation and said collapsed orientation. |
| **Claim 18** | 18. The artificial tree of claim 17 wherein a <u>pivot joint element</u> is located between said first trunk portion and said second trunk portion at a location spaced from both said first end and said second end of said second trunk portion. |
| **Claim 19** | 19. The artificial tree of claim 18 wherein said <u>pivot joint element</u> allows for at least about 180° of <u>rotation</u> of said second trunk portion relative to said first trunk portion. |
| **Claim 22** | 22. The artificial tree of claim 18 wherein said <u>pivot joint element</u> is located adjacent said upper end of said first trunk portion. |
| **Claim 24** | 24. The artificial tree of claim 17 wherein said plurality of limbs are attached to said second trunk portion in a manner which allows <u>pivoting</u> of said limbs relative to said second trunk portion. |

1    I heard argument from the parties on August 31, 2016.  Dkt. No. 107.

2                              **LEGAL STANDARD**

3        Claim construction is a matter of law.  *Markman v. Westview Instruments, Inc.*, 517 U.S.

4   370, 379 (1996).  A claim term is "generally given [its] ordinary and customary meaning," that is,

5   "the meaning the term would have to a person of ordinary skill in the art in question at the time of

6   the invention," who "read[s] the claim term not only in the context of the particular claim in which

7   the disputed term appears, but in the context of the entire patent, including the specification."

8   *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (internal quotation marks

9   omitted).  The appropriate starting point of claim construction "is always with the language of the

10  asserted claim itself."  *Comark Commc'ns Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir.

11  1998).  In addition, "[i]n light of the statutory directive that the inventor provide a 'full' and

12  'exact' description of the claimed invention, the specification necessarily informs the proper

13  construction of [a] clai[m]."  *Phillips*, 415 F.3d at 1312-13; *see also* 35 U.S.C. § 112.  Extrinsic

14  evidence such as dictionary definitions may also be useful, "so long as the dictionary definition

15  does not contradict any definition found in or ascertained by a reading of the patent documents."

16  *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1304 (Fed. Cir. 2015) (internal

17  quotation marks and emphasis omitted).  "Where there is an equal choice between a broader and a

18  narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is

19  at least entitled to a claim having the narrower meaning, [the Federal Circuit] consider[s] the

20  notice function of the claim to be best served by adopting the narrower meaning."  *Athletic*

21  *Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996); *accord Takeda Pharm.*

22  *Co. v. Zydus Pharm. USA, Inc.*, 743 F.3d 1359, 1365 (Fed. Cir. 2014); *Transperfect Glob., Inc. v.*

23  *MotionPoint Corp.*, No. 10-cv-02590-CW, 2013 WL 2299621, at *4 (N.D. Cal. May 24, 2013).

24                              **DISCUSSION**

25       The parties dispute the constructions of the following  terms: (1) "pivot joint;"

26  (2) "pivoting;" (3) "pivotably attached" and "pivotably joined;" (4) "pivot joint element;" and

27  (5) "rotating" and "rotation."

28

United States District Court
Northern District of California

United States District Court
Northern District of California

# I.      "PIVOT JOINT"

| Balsam's Construction | Frontgate's Construction | Court's Construction |
|---|---|---|
| A joint that permits rotation of a joined part relative to another joined part, changing the angle between the axes along their lengths. | A joint allowing pivoting of the second trunk relative to the first trunk by a mechanical connection between the first trunk and the second trunk from which the second trunk moves in a circle around a fixed point. | Frontgate's construction, slightly modified:<br><br>A joint allowing pivoting of the second trunk relative to the first trunk by a mechanical connection between the first trunk and the second trunk from which the second trunk ~~moves in a circle around~~ [turns on] a fixed point, changing the angle between the first trunk and the second trunk along their lengths. |

The parties dedicate the bulk of their briefing to the construction of this term.[2]  Although their constructions differ with respect to the use of "rotation" versus "pivoting," their dispute over the scope of the term is focused mostly on whether it requires that the rotation or pivoting occur either "in a circle around a fixed point" or, alternatively, "on a fixed point."[3]  Frontgate contends that the term must be restricted in one or the other of these ways.  Balsam contends that it should not be, arguing that the term should instead be construed to encompass "any kind of coupling allowing rotation of one joined part relative to the other."  Reply at 3 (Dkt. No. 101); *see also id.* at 13 ("pivot joint" extends to "any rotatable coupling that will accomplish the required tree inversion"); Opening Br. at 3-4 ("Frontgate's approach ignores the consistent teaching elsewhere in the specification that 'pivot joint' includes any rotatable coupling that accomplishes the required inversion of the second trunk portion of the tree around the first.").

In support of its construction, Frontgate points to claim 1 of the '718 patent, which recites "a *pivot joint* coupling said first trunk portion to said second trunk portion *in a manner allowing*

---

[2] Neither party's proposed construction of "pivot joint" is the same as the construction it put forward in connection with Balsam's TRO request.  As stated above, Balsam previously construed "pivot joint" as "a joint permitting rotation of one of the connected parts with respect to the other." Frontgate previously construed it as "a joint permitting rotation of the first trunk portion relative to the second trunk portion about one or more fixed points of rotation."

[3] At the hearing, Frontgate stated that changing "in a circle around a fixed point" to "on fixed point" would be an acceptable modification of its construction.

United States District Court
Northern District of California

*pivoting* of said second trunk portion relative to said first trunk portion." '718 patent at 17:20-22 (emphasis added). Frontgate contends that this claim language "limit[s] 'pivot joint' to 'pivoting' – or movement [in a circle] around a fixed point." Oppo. at 8. Frontgate further asserts that all embodiments in the specification of the claimed "pivot joint," as well as all embodiments of other "pivoting," "pivotably attached," or "pivotably connected" aspects of the claimed trees, involve movement in a circle around a fixed point and thus comply with its construction. *Id.* at 8, 12-17.

Frontgate also points to the declaration of its expert, Dr. Paul Wright, who states that the term "pivot joint" would be

> commonly understood by the POSITA as "a joint allowing pivoting of the second trunk relative to the first trunk by a mechanical connection between the first trunk and the second trunk from which the second trunk moves in a circle around a fixed point."

> Employing routine rules of grammar and syntax, the POSITA would understand the "pivot joint" of claim 1 [of the '718 patent] as a joint whose structure is further limited by its modifier, "pivot." . . . The term pivot has an ordinary meaning of moving in a circle around a fixed point. Accordingly, in the initial understanding of the term "pivot joint," the POSITA would understand the "pivot joint" to be a specific type of joint – a joint that permits one of the two parts joined by the joint to pivot, or move in a circle around a fixed point.

> My opinion is supported by dictionary definitions of "pivot" as that term is used in mechanical engineering. A "pivot" is defined as "a short, pointed shaft forming the center and fulcrum on which something turns, balances, or oscillates." Mechanica[l] engineering definitions refer to a "pivot" as a "fulcrum," such as those used in lever systems. A POSITA reviewing the asserted patents, and seeing the use of lever systems in Schooley's trees, would readily understand that the "pivot" is the "fulcrum" used in the levers in Schooley's trees. The POSITA would immediately understand the "pivot joint" of the patents to require movement around a fixed point.

Wright Decl. ¶¶ 52-54 (quoting the McGraw-Hill Dictionary of Mechanical and Design Engineering, Anmol's Dictionary of Mechanical Engineering, and the Dictionary of Mechanical Engineering);[4] *see also* Oppo. at 6-7.

---

[4] The dictionaries cited by Dr. Wright define "pivot" as follows: (1) McGraw-Hill Dictionary of Mechanical and Design Engineering: "A short, pointed shaft forming the center and fulcrum on which something turns, balances, or oscillates." Wright Decl. Ex. B (Dkt. No. 96-2). (2) Anmol's Dictionary of Mechanical Engineering: "[A] short shaft or pin on which something turns or oscillates." Wright Decl. Ex. C (Dkt. No. 96-3). (3) Dictionary of Mechanical Engineering: "A short shaft or pin on which something turns or oscillates." Wright Decl. Ex. A (Dkt. No. 96-1).

Frontgate also relies on the prosecution history of the '077 patent.  Oppo. at 18-19.  The examiner initially rejected certain claims of the '077 patent as anticipated by U.S. Patent No. 3,970,834 to Smith ("Smith").  10/01/2013 Office Action at 3-4 (Peden Decl. Ex. C, Dkt. No. 95-4).  The examiner stated,

> *Smith discloses an artificial tree* movable between an open and closed position (figures 2 and 3), the tree having multiple sections including a lower section having a center shaft #7 and a center section having a center shaft #49 *where the center section secures to the lower section by threaded section #38*.  The center shaft of the lower section is considered to be a first trunk section having an elongate form extending between a first end and a second end, and the center shaft of the middle section is considered to be a second trunk section having an elongate form extending between a first end and a second end.  The middle section . . . includes a plurality of laterally extending branches indicated as #20-27.

> *The middle section screws into the lower section where the threads allow the lower section to pivot (rotate around the center shaft axis) relative to the middle section.*

*Id.* (emphasis added).  Schooley responded to the rejection as follows:

> Applicant has carefully studied the examiner's rationale for the citation of Smith.  *Applicant recognizes the examiner's interpretation of how Smith teaches multiple sections in Smith's artificial tree, and that they do thread together by rotation, and that the examiner considers this rotation as a form of "pivot" type attachment. Applicant has chosen to amend these claims where appropriate, adding further limitations directed to the unique manner in which the tree of this invention has the two trunk portions thereof pivot relative to each other.*  With these amendments and included arguments, Applicant respectfully submits that these claims are now in a form defining patentable subject matter.

> Specifically, and considering the remaining claims in numerical order, *claim 1 has been amended to require that the two trunk portions be pivotably attached "at a location spaced from said first end and said second end of said second trunk portion." Applicant notes that Smith has attachment of the sections thereof only at ends thereof (see figure 1). In contrast, claim 1 has now been amended to require that attachment of the first trunk portion to the second trunk portion be "at a location spaced from said first end and said second end of said second trunk portion." Thus, claim 1 requires attachment of the second trunk portion somewhere between these ends, rather than at one of these ends, as taught by Smith.*

> Applicant notes that this limitation to claim 1 has the important impact of facilitating the collapsing and deployment of limbs extending from the second trunk portion when the second trunk portion is pivoted about this attachment to the first trunk portion.

With this amendment to claim 1, applicant respectfully submits that claim 1 is patentably distinct from the teachings of Smith and in a form warranting allowable status.

Response to 10/01/13 Office Action at 8 (Peden Ex. D, Dkt. No. 95-5) (emphasis added). Frontgate highlights Schooley's statement that he had amended claim 1 to add "further limitations directed to the unique manner in which the tree of [his] invention has the two trunk portions thereof pivot relative to each other." *Id.* Frontgate contends that "[t]he Court's construction of 'pivot joint'. . . cannot be broader than Schooley's representation to the PTO about the scope of his invention." Oppo. at 18.

Balsam does not dispute that Frontgate's position on the ordinary and customary meaning of "pivot" is generally accurate, insofar as "pivot" is used "in the world at large, outside of the ['718 patent]." Reply at 2.[5]  Likewise, Balsam does not dispute that, as a general matter, the ordinary and customary meaning of "pivoting" is "turning . . . on a fixed point," as Frontgate contends. *See id.* at 13-14. Balsam argues instead that the '718 patent uses "pivot" in a special way.[6]  Specifically, it contends that the specification "uses the terms 'pivot' and 'rotate' . . . interchangeably to describe the relative motion the 'pivot joint' permits between the two joined parts [of the claimed trees]." Opening Br. at 5; *see also* Reply at 3 ("[T]he specification interchangeably describes the motion of a 'pivot joint' with the terms, 'rotate,' 'pivot,' 'rotation,' 'pivoting,' and 'rotating.'"). The portions of the specification Balsam cites for this argument state as follows, with all emphasis added:

- "The at least one second trunk portion has a portion thereof

---

[5] Balsam does criticize Frontgate for citing separate dictionary definitions for the terms "pivot" and "joint" instead of unitary dictionary definitions for "pivot joint." Opening Br. at 14.  Neither party submits any unitary dictionary definitions for "pivot joint."

[6] To the extent that Balsam means to raise a lexicography argument with respect to the term "pivot joint," I agree with Frontgate that the record here falls short of establishing a clearly expressed intent to redefine either "pivot" or "pivot joint." The Federal Circuit "recognize[s] that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. However, to act as his own lexicographer, the inventor must "clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (internal quotation marks omitted); *accord Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1375 (Fed. Cir. 2015).  That is, the inventor must "clearly express an intent to redefine the term." *Thorner*, 669 F.3d at 1365 (internal quotation marks omitted).  Schooley did not do so here.

United States District Court
Northern District of California

between a first end and a second end of the second trunk portion pivotably attached at least indirectly through the pivot joint to the first trunk portion. ***This pivot joint allows the at least one second trunk portion to pivot substantially 180°*** from a collapsed orientation extending substantially vertically to a deployed orientation extending substantially vertically, but with the first and second ends having swapped." '718 patent at 2:25-32.

• "The limbs are pivotably attached to the at least one second trunk portion. These limbs pivot between a perpendicular orientation and a collapsed orientation pivoting toward the second end of the second trunk portion somewhat away from the deployed position. Such pivoting can occur by gravity or through manual movement of the limbs. If by gravity alone, ***merely rotating the second trunk portion about the pivot joint between the collapsed orientation and the deployed orientation*** allows the limbs to pivot from their collapsed position to their deployed substantially perpendicular to the second trunk portion position." *Id.* at 2:36-47

• "FIGS. 8-10 are details of FIGS. 3-5 revealing details of the invertible Christmas tree of this invention around ***a central pivot joint which allows a second trunk portion of the Christmas tree to pivot relative to a first trunk portion of the Christmas tree.***" *Id.* at 3:56-60

• "FIG. 18 is a front elevation view of ***an alternative pivot joint for joining the rotating trunk portion to the fixed trunk portion***, with the repositioning of the rotating trunk shown in broken lines." *Id.* at 4:17-20

• "FIG. 20 is a front elevation view of ***a second alternative pivot joint for joining the rotating trunk to the fixed trunk, with the rotating trunk shown in broken lines*** after repositioning." *Id.* at 4:22-25.

• "***FIGS. 18 and 19 depict front and top views of an alternate joint 136 with a bracket 138 pivotably attached to the upper end 34 of the fixed trunk 30 and an end of the bracket 138 opposite the upper end 34 of the fixed trunk 30 either fixed or pivotably attached to the rotating trunk 40. Rotation of the rotating trunk 40 relative to the fixed trunk 30 occurs by first moving along arrow C', then moving along arrow C''. 180° of rotation is achieved and the rotating trunk 40 moves*** from being directly adjacent the fixed trunk 30 on a 60 first side thereof to being directly adjacent the fixed trunk 30 on a second side opposite the first side." *Id.* at 7: 49-62.

• "FIG. 37 is a side elevation view of a further alternative embodiment of the artificial tree of this invention. In this alternative embodiment, an artificial tree 610 is shown. The tree 610 includes a base 620 with a fixed trunk 630 extending vertically up from the base 620. At an upper end of the fixed trunk 630 a pivot 636 is provided. Uniquely, with this tree 610, two upper trunks 642, 644 are provided. ***Each of the two upper trunks 642, 644 each rotate about the common pivot joint 636 to attach the upper trunk 642, 644 to the lower trunk 630.***" *Id.* at 16:5-14.

11

• "[A] pivot joint coupling said first trunk portion to said second trunk portion *in a manner allowing pivoting of said second trunk portion relative to said first trunk portion.*" *Id.* at 17:20-24 (claim 1).

• "The collapsible Christmas tree of claim 1 *wherein said pivot joint allows for at least about 180° of rotation* of said second trunk portion relative to said first trunk portion." *Id.* at 17:39-42 (claim 4).

Balsam further asserts that the specification "takes care not to limit 'pivot joint' to particular mechanisms." Opening Br. at 6. The portions of the specification Balsam cites for this argument state as follows, with all emphasis added:

• "To facilitate such inversion, the trunk includes at least two trunk portions including a first trunk portion adapted to be supported above a floor and at least one second trunk 20 portion pivotally attached to the first trunk portion, *at least indirectly*, through at least one pivot joint." '718 patent at 2:17-21.

• "The at least one second trunk portion has a portion thereof between a first end and a second end of the second trunk portion pivotably attached *at least indirectly* through the pivot joint to the first trunk portion." *Id.* at 2:25-27.

• "The upper end 34 of the fixed trunk 30 includes a pivot 36 adjacent thereto. This pivot 36 *can be* as simple as a hole passing laterally through the fixed trunk 30 with an axle 37 passing through this hole. In the embodiment depicted in FIGS. 3-11, the pivot 36 is in this simple form with the axle 37 providing for pivotable attachment between the rotating trunk 40 and the fixed trunk 30." *Id.* at 7:30-36.

• *"While the embodiment of FIGS. 3-10 is perhaps the simplest embodiment for the pivot 36, other embodiments of this pivot could be utilized, including those depicted in FIGS 18-21.* For instance, FIGS. 18 and 19 depict front and top views of an alternate joint 136 with a bracket 138 pivotably attached to the upper end 34 of the fixed trunk 30 and an end of the bracket 138 opposite the upper end 34 of the fixed trunk 30 either fixed or pivotably attached to the rotating trunk 40. Rotation of the rotating trunk 40 relative to the fixed trunk 30 occurs by first moving along arrow C", then moving along arrow C". 180° of rotation is achieved and the rotating trunk 40 moves from being directly adjacent the fixed trunk 30 on a 60 first side thereof to being directly adjacent the fixed trunk 30 on a second side opposite the first side. In FIGS. 20 and 21 another embodiment is provided in the form of a second alternative joint 236. An axle 237 is provided to allow the rotating trunk 240, having a square cross-section, 65 to rotate relative to the fixed trunk 230 in the form of a generally square cross-sectioned structure having one open side opposite the side bearing the axle 237. In this embodiment, the rotating trunk 40 has a size slightly smaller than that of the fixed trunk 30 so that the rotating trunk 40 can rotate to nest inside the fixed trunk 30 when in one position, but pivot out of this nested configuration when in the second configuration after

180° of rotation (along arrow C' and then arrow C" (FIG. 20)). ***Other embodiments of joints or pivots could also be resorted to, to allow for pivotable attachment of the rotating trunk 40 to the fixed trunk 30.***" *Id.* 7:49-8:9.

> • ***"This disclosure is provided to reveal a preferred embodiment of the invention and a best mode for practicing the invention. Having thus described the invention in this way, it should be apparent that various different modifications can be made to the preferred embodiment without departing from the scope and spirit of this invention disclosure.*** When structures are identified as a means to perform a function, the identification is intended to include all structures which can perform the function specified. When structures of this invention are identified as being coupled together, such language should be interpreted broadly to include the structures being coupled directly together or coupled together through intervening structures. ***Such coupling could be permanent or temporary and either in a rigid fashion or in a fashion which allows pivoting, sliding, or other relative motion while still providing some form of attachment, unless specifically restricted.***" *Id.* at 16:58-17:7.

Citing these excerpts, Balsam concludes that "[t]he specification is thus explicit that its 'pivot joint' couplings are not limited to any particular mechanisms."  Opening Br. at 7.  In line with this argument, Balsam's expert, Dr. Roger McCarthy, states that

> As of 2008, an enormous variety of rotatable couplings were well-known to skilled artisans in mechanical design . . . Out of the universe of different types of rotatable couplings known in the art in 2008, there are many that would facilitate the required trunk inversion of the [asserted patents]. The average designer of mechanical consumer products in 2008 would understand that the [asserted patents] are intentionally nonspecific about this common well-known mechanical element. The [asserted patents] illustrate some simple pivot joints attached near the center of gravity of the rotating trunk 40 for ease of consumer rotation and stability. But a well-known "goose neck" type of connection attached in the same locations would accomplish the same goals, as would the common "flexible arm" of a machinist's indicator (which uses sliding joints). A flexible spring connection between fixed trunk 30 and rotating trunk 40 could be used, and the spring constant selected to compensate for connection locations on rotating trunk 40 away from the center of gravity, and still make the consumer effort small. None of these known alternatives would move rotating trunk 40 in a circle, or move it around a fixed point, but all these, and many others, could be used to accomplish the inversion of the tree.

McCarthy Decl. ¶¶ 23-24 (Dkt. No. 87).

Balsam also argues (1) that Frontgate's construction would exclude the embodiment disclosed in figure 18 of the specification, Opening Br. at 7-11; Reply at 8-11; (2) that Frontgate's construction limits "pivot joint" to "the simple axle-through-a-hole-style pivot joint," but

13

1  dependent claim 5 of the '718 patent recites just this sort of pivot joint,[7] meaning that the doctrine

2  of claim differentiation "precludes" Frontgate's construction, Mot at 11-13; Reply at 12-13; and

3  (3) that Schooley was not required to "comprehensively catalog" all iterations of the claimed

4  "pivot joint" for the term to cover "any kind of coupling allowing rotation of one joined part

5  relative to the other," Reply at 1, 3, 6; Opening Br. at 15.

6          Having considered the parties' briefing, their other submissions, and their arguments at the

7  claim construction hearing, I find that Balsam's construction is overbroad, and I adopt Frontgate's

8  construction with the modifications set out above.  I use Frontgate's alternative proposal of "on a

9  fixed point" instead of "in a circle around a fixed point," and "turns" instead of "moves," because

10 I find that this language better reflects the intrinsic and extrinsic evidence on record and also

11 conforms to Frontgate's construction of "pivoting," discussed below.  Likewise, I include the

12 phrase "changing the angle between the first trunk and the second trunk along their lengths,"

13 which is based on Balsam's construction, because it accurately reflects how "pivot joint" is used

14 in the claims and specification.

15         I agree with Balsam that the asserted patents use "pivot" and "rotate" (and their derivative

16 forms) interchangeably.  This is evident both in the portions of the specification and claims cited

17 by Balsam, and also in claims 6 and 11-14 of the '077 patent, which repeatedly use "rotating" and

18 "rotation" to describe the motion between trunk portions that are "pivotally attached," "pivotally

19 joined," or coupled by a "pivot joint element."  *See* '077 patent at 17:48-64, 18:14-35.  However,

20 it is not clear to me why this interchangeable use of "pivot" and "rotate" supports Balsam's

21 construction.  The patents consistently use both "pivot" and "rotate" in the undisputed ordinary

22 and customary sense of the word "pivot," i.e., to describe the action of turning on a fixed point.

23 As Frontgate correctly points out, all of the disclosed embodiments of the claimed "pivot joint," as

24 well as all of the disclosed embodiments of other "pivoting," "pivotally attached," "pivotally

25 joined," or "pivotally connected" aspects of the claimed trees, allow for motion on a fixed point.

26

27 [7] Claim 5 of the '718 patent recites, "The collapsible Christmas tree of claim 4 *wherein said pivot*
   *joint includes an axle aligned with a rotational axis with said axle coupled directly to both said*
28 *first trunk portion and said second trunk portion* with said second trunk portion pivoting about
   said axle relative to said first trunk portion." '718 patent at 17:42-46 (emphasis added).

United States District Court
Northern District of California

United States District Court
Northern District of California

Balsam identifies nothing in the patents that indicates that the claimed "pivot joint" extends to any other sort of motion. It points to the specification's description of the invention as including "at least one second trunk . . . portion pivotably attached to the first trunk portion, *at least indirectly*, through at least one pivot joint." '718 patent at 2:17-21 (emphasis added); *see also id.* at 2:25-27 ("The at least one second trunk portion has a portion thereof between a first end and a second end of the second trunk portion pivotably attached *at least indirectly* through the pivot joint to the first trunk portion.") (emphasis added). But the phrase "at least indirectly" plainly refers to how the first and second trunk portions are connected through the pivot joint, leaving them connected, but only "indirectly" so. The phrase says nothing about the sort of motion allowed by the pivot joint. Meanwhile, by referring to the first and second trunk portions as "pivotably attached . . . through [a] pivot joint" without any indication that the word "pivot" is being used other than in its ordinary and customary sense, the description indicates that the first and second trunk portions are attached in a way that allows for motion on a fixed point.

Similarly, the specification's reference to "[o]ther embodiments of joints or pivots . . . to allow for pivotable attachment of the rotating trunk" does not support the conclusion that the claimed "pivot joint" extends to couplings other than those that allow for motion on a fixed point, because the referenced "other embodiments" are of "joints or pivots *[that] allow for pivotable attachment*." '718 patent at 8:7-9 (emphasis added); *see also id.* at 7:50-51 (referencing "other embodiments *of this pivot*") (emphasis added).

Balsam also relies on the specification's statement that structures in the claimed trees could be "coupled" together "either in a rigid fashion or in a fashion which allows pivoting, sliding, or other relative motion while still providing some form of attachment, unless specifically restricted." *Id.* at 16:58-17:7. But the term "pivot joint" does not appear in the relevant paragraph, and it is unclear whether the statement was intended to define the term. If anything, the claim limitation that includes "pivot joint" appears to be an instance in which the particular form of coupling is "specifically restricted," i.e., to coupling by a "pivot joint . . . in a manner allowing pivoting." *See* '718 patent at 17:20-22 (claim 1) ("a pivot joint coupling said first trunk portion to said second trunk portion in a manner allowing pivoting of said second trunk portion relative to said first trunk

portion"). Further, the statement indicates that Schooley recognized the distinction between "pivoting" and other sorts of "relative motion," yet decided to use the term "pivot joint" in his claims.[8]

Balsam's other arguments also fail to support its construction. I am not convinced that figure 18 is inconsistent with a construction of "pivot joint" that requires turning on a fixed point. Similarly, Balsam's reliance on the doctrine of claim differentiation is unpersuasive given that imposing a requirement of motion on a fixed point does not limit "pivot joint" to "the simple axle-through-a-hole-style pivot joint," as Balsam contends. Reply at 12. Finally, Balsam's argument that Schooley was not required to "comprehensively catalog" all iterations of the claimed "pivot joint" for the term to cover "any kind of coupling allowing rotation of one joined part relative to the other," Reply at 3, is based on the notion that "pivot joint" is synonymous with "rotatable coupling." Indeed, each time Balsam makes this argument, it uses the term "rotatable coupling" instead of "pivot joint." Opening Br. at 15 ("[Mr. Schooley] did not invent – and . . . was discouraged from cataloging – the many known kinds of rotatable couplings his invention could use."); Reply at 1 ("Already-known component parts – [such as] rotatable couplings – should not, and for the sake of economy, cannot, be comprehensively cataloged."); *id.* at 6 ("Contrary to Frontgate's contention, Mr. Schooley was not required to have illustrated and described every known variation of rotatable coupling, on penalty of being limited to those he did describe."); McCarthy Decl. ¶¶ 23-24 (describing the "enormous variety of rotatable couplings [known] to skilled artisans in mechanical design"). The problem with this argument is that the patents do not use the term "rotatable coupling," or "coupling allowing rotation of one joined part relative to the other," or any other broadly phrased term that might encompass the "enormous variety of rotatable

---

[8] I also note that courts have been skeptical about expanding the scope of claim terms based on catch-all, interpret-this-broadly provisions, which is arguably what Balsam is relying on here. *See Akeva L.L.C. v. Adidas-Salomon AG*, 208 F. Appx. 861, 863 (Fed. Cir. 2006) (rejecting patent holder's reliance on a "catch-all phrase at the end of the patent specification, which states '[t]hus, it is intended that the present invention cover all possible combinations of the features shown in the different embodiments, as well as modifications and variations of this invention, provided they come within the scope of the claims and their equivalents'"); *Gradient Enterprises, Inc. v. Skype Techs. S.A.*, No. 10-cv-06712, 2015 WL 5567926, at *14 (W.D.N.Y. Sept. 22, 2015) ("Tossing in language that one of ordinary skill in the art may be able to conceive of other applications for the basic concept does not broaden the scope of the claimed invention.").

United States District Court
Northern District of California

couplings [known] to skilled artisans in mechanical design" even in the absence of specific descriptions of the various types of rotatable couplings.  Instead, they use the term "pivot joint," and use it repeatedly and consistently in a way that conforms to the undisputed ordinary and customary meaning of the word "pivot," i.e., to describe a joint that allows turning on a fixed point.

## II.     "PIVOTING"

| Balsam's Construction | Frontgate's Construction | Court's Construction |
|---|---|---|
| Motion permitted by a pivot joint. | Turning, balancing, or oscillating on a fixed point or fulcrum. | Frontgate's construction, slightly modified:<br><br>Turning, ~~balancing, or oscillating~~ on a fixed point ~~or fulcrum~~. |

The parties' agree that the patents use the term "pivoting" to describe the motion allowed by the claimed "pivot joint."  *See* Oppo. at 19 ("This construction [of 'pivoting'] is supported by the same dictionary definitions that support [Frontgate's construction of] 'pivot joint' because 'pivoting' is the . . . motion allowed by the 'pivot joint' of the asserted claims."); Opening Br. at 17 ("But 'pivoting' is used in the claims to describe what the pivotable couplings of the patents do – whether 'pivot joints,' 'pivotable attachments,' or 'pivot joint elements.'").  Accordingly, the analysis above with respect to "pivot joint" essentially resolves the parties' dispute over the meaning of "pivoting."  Indeed, given my construction of "pivot joint," there is little if any practical difference between the parties' respective constructions of "pivoting."  I adopt Frontgate's construction because it eliminates the need to reference the meaning of "pivot joint" to understand the meaning of "pivoting."  Also, Balsam's construction is slightly at odds with the fact that the patents use "pivoting" in multiple claims that do not include the term "pivot joint."  I modify Frontgate's construction slightly to better reflect the use of "pivoting" in the claims and specification.

United States District Court
Northern District of California

United States District Court
Northern District of California

### III.    "PIVOTABLY ATTACHED" AND "PIVOTABLY JOINED"

| "pivotably attached" | | |
|---|---|---|
| **Balsam's Construction** | **Frontgate's Construction** | **Court's Construction** |
| Attached and permitting pivoting. | Attached by a pivot joint. | Balsam's construction: Attached and permitting pivoting. |

| "pivotably joined" | | |
|---|---|---|
| **Balsam's Construction** | **Frontgate's Construction** | **Court's Construction** |
| Joined and permitting pivoting. | Indefinite. OR Attached by a pivot joint. | Balsam's construction, slightly modified: ~~Joined~~ [Attached] and permitting pivoting. |

"Pivotably attached" appears in several claims of the '077 patent, to describe both how the different trunk portions are connected, and how the limbs are connected to the trunk.  The term is also used on multiple occasions in the specification.  "Pivotably joined" appears only once in the patents, in the final limitation of claim 11 of the '077 patent, which provides, "said rotating trunk pivotably joined to said fixed trunk at a location between said first end and said second end; and a plurality of limbs extending laterally from said rotating trunk."  '077 patent at 18:14-20.  The term does not appear anywhere else in '077 patent or anywhere at all in the '718 patent.

Balsam describes "pivotably attached" and "pivotably joined" as "virtual synonyms."  Reply at 14.  It asserts that they are "used interchangeably in the specification" and "cover the same scope."  *Id.*  It also states, however, that its differing constructions for the terms reflect the fact that "'attached' is sometimes used for less permanent connections than 'joined.'"  Opening Br. at 18 (citing McCarthy Decl. ¶¶ 46-47).

Frontgate argues that the intrinsic record would indicate to a POSITA that "pivotably attached" means "attach[ed] through the use of a pivot joint," and that "pivotably joined" is indefinite given that the intrinsic record "provides no objective boundaries" for the distinction between "pivotably attached" and "pivotably joined."  Oppo. at 21-23.

United States District Court
Northern District of California

I adopt Balsam's constructions, modified as set out above.  Although there is little if any practical difference between the parties' constructions, I find that Balsam's better reflect the use of "pivotally attached" and "pivotally joined" in the patents.  In addition, Frontgate's construction of "pivotally attached" as "attached by a pivot joint" is out of step with the fact that "pivotally attached" is used in the asserted claims to describe both how the trunk portions are connected *and* how the limbs are connected to the trunk, yet Frontgate's (and now the Court's) construction of "pivot joint" is limited to how the trunk portions are connected.

I modify Balsam's construction of "pivotally joined" because I find that a POSITA would understand "pivotally joined" as used in the patents to be synonymous with "pivotally attached" based on the numerous, consistent descriptions and examples in the specification of how the different trunk portions are connected.  For this reason, I also find that when "read in light of the specification," the term "pivotally joined" does not "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014).

## IV.    PIVOT JOINT ELEMENT

| Balsam's Construction | Frontgate's Construction | Court's Construction |
|---|---|---|
| An element that joins two parts and that permits rotation of a joined part relative to another joined part, changing the angle between the axes along their lengths. | A pivot joint that is placed on a separate spacing element to distance the pivot joint away from the end of the second trunk. | Frontgate's construction. |

The specification does not use the term "pivot joint element."  The term appears in asserted claims 6, 12, 18, 19, and 22 of the '077 patent.  It appears nowhere in the '718 patent.

Schooley added the term to the '077 patent following a rejection by the examiner for indefiniteness under 35 U.S.C. § 112(b).  Originally, the '077 patent, like the '718 patent, used the term "pivot joint," not "pivot joint element."  Bernstein Decl. Ex. F at 35-39 (Dkt. No. 86-6).  Several of the original claims of the '077 patent required "a pivot joint . . . located between said first trunk said portion and said second trunk portion at a location spaced from both said first end

19

1    and said second end of said second trunk portion." *Id.* at 35.  The examiner found that

> the location of the pivot joint is unclear.  It is unclear how the pivot joint can be located between the first and second trunk portions which are pivotally attached, and be spaced from both ends of the second trunk section. Do applicants intend to require the presence of an additional element spacing the first trunk portion from the second trunk portion such that he pivot joint may be positioned on the additional spacing element? ***For prior art purposes the pivot joint will be considered to be located between the first and second trunk portions where the pivot [joint] is located on an element positioned between the first and second trunk portions such as to distance the pivot joint away from the end of the second trunk portion.***

10/01/2013 Office Action at 2-3 (emphasis added).

Schooley responded by replacing "pivot joint" with "pivot joint element" in the rejected claims.  Response to 10/01/2013 Office Action at 2-4.  He provided no explanation of the amendment except to state,

> [C]laim 4 has been amended to replace the phrase "pivot joint" with the phrase "pivot joint element." ***Applicant submits that this amendment is consistent with the interpretation given to claim 4 "for prior art purposes"*** . . . and puts claim 4 in sufficiently definite and distinct form to satisfy the requirements of § 112(b). Should the examiner have further verbiage which would be considered to more effectively satisfy the requirements of § 112(b) applicant invites any further suggestions from the examiner. With these amendments to claim 4, applicant respectfully submits that claim 4 is now in proper form for allowance.
>
> Claims 5-8 depend from claim 4, either directly or through intervening claims. Claims 5-8 have been amended in a manner similar to claim 4 to replace the phrase "pivot joint" with the phrase "pivot joint element." . . . Applicant respectfully submits that claims 5-8 are also now in a form warranting allowable status.

*Id.* at 7 (emphasis added).  The examiner subsequently found, without explanation, that the indefiniteness rejection had been overcome.  Bernstein Decl. Ex. I (Dkt. No. 86-9).

Both parties cite to this prosecution history in defending their constructions.  *See* Opening Br. at 19-21; Oppo. at 23-25.  Balsam, however, discounts the significance of the exchange on the ground that, according to Balsam, the examiner's comments were based a misinterpretation of the claims.  Opening Br. at 19-21.

I adopt Frontgate's construction.  Balsam does not dispute that "pivot joint element" lacks an ordinary and customary meaning in the art.  *See* Oppo. at 23; Reply at 14-15.  In this situation,

United States District Court
Northern District of California

"[t]he duty . . . falls on the patent applicant to provide a precise definition for the disputed term," *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004); *see also J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1570 (Fed. Cir. 1997), and "a court must resort to . . . the written description and the prosecution history . . . to obtain the meaning of th[e] term," *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1164 (Fed. Cir. 2004).[9]   Balsam identifies nothing in the specification that supports its construction.  *See* Opening Br. at 19-21; Reply at 14-15.   Meanwhile, the prosecution history strongly supports Frontgate's construction.  The examiner stated that "[f]or prior art purposes the pivot joint will be considered to be located between the first and second trunk portions *where the pivot [joint] is located on an element positioned between the first and second trunk portions such as to distance the pivot joint away from the end of the second trunk portion*."  10/01/2013 Office Action at 2-3 (emphasis added).  Schooley responded that his use of "pivot joint element" instead of "pivot joint" was "consistent with [this] interpretation."   Response to 10/01/2013 Office Action at 2-4.  In light of Schooley's apparent acceptance of the examiner's interpretation, and the absence of any other basis in the intrinsic record for ascertaining the meaning of "pivot joint element," I agree with Frontgate that "pivot joint element" should be construed in line with the examiner's interpretation.

---

[9] A claim term that lacks a "plain or established meaning to one of ordinary skill in the art . . . ordinarily cannot be construed broader than the disclosure in the specification."  *Indacon, Inc. v. Facebook, Inc.*, No. 2015-1129, 2016 WL 3162043, at *3 (Fed. Cir. June 6, 2016); *see also Irdeto*, 383 F.3d at 1300 (holding that there is no presumption of ordinary and customary meaning "where a disputed term lacks an accepted meaning in the art," and that "absent such an accepted meaning, we construe a claim term only as broadly as provided for by the patent itself").   In such circumstances, "[t]he duty . . . falls on the patent applicant to provide a precise definition for the disputed term," *Irdeto*, 383 F.3d at 1300; *see also J.T. Eaton*, 106 F.3d at 1570, and "a court must resort to the remaining intrinsic evidence – the written description and the prosecution history – to obtain the meaning of th[e] term," *Goldenberg*, 373 F.3d at 1164; *see also Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 991 (Fed. Cir. 2007) (construing the term "terrain floor boundary," which had "no ordinary meaning to a skilled artisan," according to the particular description of the term in the specification); *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1359-61 (Fed. Cir. 2005) (construing the term "download component," which had "no commonly understood meaning reflected in general dictionaries or similar sources" and "[no] specialized meaning in the relevant art," to include the particular attributes described in the specification).

V.      ROTATING AND ROTATION

| Balsam's Construction | Frontgate's Construction | Court's Construction |
|---|---|---|
| Turning around an axis, which may move. | Moving in a circular path around a fixed axis of rotation. | Turning around a fixed point. |

As discussed above, I agree with Balsam that the asserted patents use "pivot" and "rotate" (and their derivative forms) interchangeably.  Accordingly, I apply my construction of "pivoting" to "rotating" and "rotation."

CONCLUSION

For the foregoing reasons, the disputed terms are construed as stated above.[10]

**IT IS SO ORDERED**.

Dated: September 1, 2016



_____
WILLIAM H. ORRICK
United States District Judge

---

[10] Frontgate's objections to Balsam's reply evidence, Dkt. No. 105, are OVERRULED.

United States District Court
Northern District of California